2012 ND 254

**In the Interest of T.H., a child.**

**Heather Pautz, Barnes County Director of Social Services, Petitioner and Appellee**

**v.**

**T.H., a Child, A.S., Mother, K.H., Father, Respondents**

**K.H., Father, Appellant.**

**No. 20120168.**

Supreme Court of North Dakota.

Dec. 18, 2012.

Bradley A. Cruff, Assistant State's Attorney, Valley City, N.D., for petitioner and appellee.

Jonathan T. Garaas, Fargo, N.D., for appellant.

CROTHERS, Justice.

[¶ 1] K.H. appeals from a juvenile court permanency order extending placement of his daughter, T.H., in the custody and control of Barnes County Social Services until June 1, 2012. We reverse because the hearing to extend the permanency order was not held before the prior permanency order expired as required under N.D.C.C. § 27-20-36.

## I

[¶ 2] K.H. is the father and A.S. is the mother of T.H., and K.H. was granted custody of T.H. K.H. is married to G.H. and the couple resides in North Dakota. A.S. currently resides in South Dakota. T.H. was found a deprived child and since late 2008 was placed in the custody of Barnes County Social Services through a series of juvenile court permanency orders. The earlier proceedings in this case are detailed in *Interest of T.H.*, 2012 ND 38, 812 N.W.2d 373, in which we affirmed a juvenile court order extending T.H.'s placement. On June 13, 2011, while K.H.'s appeal from that order was pending, the juvenile court entered an order continuing the previous order and stating, "All of the parties consented to the District Court continuing the March 24, 2011 order through January 12, 2012 provided the order of continuance shall not act as a waiver of any of the rights of the respondents." In the meantime, Social Services removed T.H. from her North Dakota foster home and placed her with her mother

in South Dakota for a "trial home visit" beginning on November 28, 2011.

[¶ 3] Upon the filing of another request to extend the permanency order, the juvenile court issued a notice setting the permanency hearing for December 20, 2011. A.S.'s attorney responded by letter, stating the court previously had set a permanency hearing for February 27, 2012 and the attorney had a conflict with the December 20, 2011 date. On December 5, 2011, the court wrote all counsel, stating:

"This is in response to Mr. Brother's letter of December 2nd, 2011. I've checked with the juvenile office and they informed me that because of Federal time requirements a permanency hearing in this matter must be held by January 12th, 2012. If I accept Mr. Brother's letter as a request for continuance then we can have the permanency hearing on February 27th, 2012. While Mr. Brother[ ]s is not available, I note that Mr. Toay has filled in from time to time. To make it clear, I need a request for continuance or I will hold the hearing on December 20th, 2011. If the matter is continued we will keep our February 27th, 2012, date and cancel the December 20th, 2011 date. Please respond promptly to this letter."

[¶ 4] A.S.'s attorney filed the only response to the juvenile court's letter and requested a continuance of the hearing to February 27, 2012. On December 7, 2011, the court issued an order granting the continuance and rescheduling the December 20, 2011 hearing for February 27, 2012. The order further provided "that the care, custody and control of the child to the Director of the Barnes County Social Service be extended until this matter can be heard by the Court." On February 17, 2012, A.S.'s attorney requested another continuance for 90 days because this Court's decision in the prior appeal remained pending and because "I have been asked by my client to file a motion in the underlying paternity action seeking to change custody of the child from [K.H.] to my client based on the Juvenile Court action that has been ongoing for a considerable period of time and based on the placement of the child by Barnes County Social Services with my client." The court did not grant the continuance.

[¶ 5] At the beginning of the February 27, 2012 hearing, K.H.'s attorney argued the juvenile court lacked jurisdiction to proceed, in part because the hearing on the motion to extend the permanency order was not held before the previous order expired by its own terms on January 12, 2012. The court rejected the argument and heard evidence presented by T.H.'s caseworker in support of the motion to extend the permanency order. The permanent plan for T.H. was reunification with K.H., placement with A.S. or another relative, or termination of parental rights and adoption. The caseworker testified Social Services abandoned its plans to seek termination of K.H.'s parental rights when placement of the child with her mother became an available option. The caseworker testified Social Services was "in the process of complying with interstate compact requirements," necessitating its retention of custody over T.H. for six months after T.H.'s placement with her mother. The caseworker testified reunification of T.H. with K.H. and his wife no longer was an option, requested the permanency order be extended through May 28, 2012 and said Social Services would not attempt to obtain any further court orders in the case "[a]s long as placement doesn't disrupt." The court found T.H. continued to be a deprived child and it was contrary to T.H.'s welfare to remain in K.H. and G.H.'s home "because the goals of the

prior order regarding [K.H. and G.H.] have not been met." The court found:

"Services were offered to prevent or eliminate the need for removal of [T.H.] from her home, including: visitation with parents and other family members, counseling for [T.H.], foster care case management and parent aide services, child and family team meetings, medical appointments as needed for [T.H.], marital counseling for [K.H. and G.H.] and individual counseling for [G.H.], transportation assistance and reimbursement, parental capacity evaluations, family counseling, intensive in-home therapy, parenting education, ICPC [Interstate Compact on the Placement of Children] home study for [A.S.], . . . and individual counseling for [A.S.]. Reasonable efforts to place this child with siblings are not required pursuant to 27–20–32.2(2)(d) North Dakota Century Code, because this is the only child in a foster care setting; however the custodian shall provide frequent visitation or other ongoing interaction with siblings unless it is contrary to the safety and well-being of any siblings. All reasonable efforts have been made to prevent the need for removing this child from her own home and to make it possible to return this child to her own home."

The court ordered that T.H. remain under the custody and control of Social Services until June 1, 2012.

## II

[¶ 6] Section 27–20–36(4)(a), N.D.C.C., requires that an order extending an order of disposition be made only if a "hearing is held before the expiration of the [prior] order." Social Services concedes the statute was violated when the hearing was not held before the prior order terminated on January 12, 2012, and the court could not extend that order with the December 7, 2011 order granting the continuance without first holding a hearing. *See Interest of N.W.*, 531 N.W.2d 303, 304, 306–07 (N.D. 1995). K.H. argues the statutory violation divested the juvenile court of jurisdiction to hold the February 27, 2012 hearing and, therefore, the resulting permanency order extending T.H.'s placement is void.

[¶ 7] A court has jurisdiction to issue a valid order if it has jurisdiction over the parties and the subject matter of the action. *See, e.g., Mills v. City of Grand Forks*, 2012 ND 56, ¶ 10, 813 N.W.2d 574, and cases collected therein. The juvenile court had jurisdiction over the parties and had subject matter jurisdiction because it "had the 'power to hear and determine the general subject involved in the action.'" *Id.* at ¶ 11 (quoting *Giese v. Giese*, 2004 ND 58, ¶ 6, 676 N.W.2d 794). It is well settled that "unless a statute imposing a time limit declares that the time limit is jurisdictional, we will not treat the time limit as affecting the jurisdiction of a court or administrative agency." *Henry v. Securities Comm'r*, 2003 ND 62, ¶ 10 n. 2, 659 N.W.2d 869; *see also Interest of J.H.*, 2007 ND 1, ¶ 1, 729 N.W.2d 334; *Interest of M.D.*, 1999 ND 160, ¶ 16, 598 N.W.2d 799; *Interest of P.L.P.*, 556 N.W.2d 657, 659 (N.D.1996); *Interest of Nyflot*, 340 N.W.2d 178, 183 (N.D.1983). Section 27–20–36, N.D.C.C., does not state that the time limit for a hearing is jurisdictional. *See also N.W.*, 531 N.W.2d at 307. The statutory violation did not divest the juvenile court of jurisdiction to hold the hearing and its permanency order extending T.H.'s placement is not void.

## III

[¶ 8] K.H. argues the evidence presented at the hearing was insufficient to establish T.H. continued to be deprived.

[¶ 9] A disposition order may be extended if the juvenile "court finds the

extension is necessary to accomplish the purposes of the order" and "the child remains deprived as defined by N.D.C.C. § 27–20–02(8)." *T.H.*, 2012 ND 38, ¶ 28, 812 N.W.2d 373.

"Whether a child is deprived is a finding of fact, and a juvenile court's findings of fact will not be reversed on appeal unless they are clearly erroneous. *In re B.B.* ("*B.B.I*"), 2008 ND 51, ¶ 4, 746 N.W.2d 411. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support the finding, or this Court is convinced, on the basis of the entire record, that a mistake has been made. *Id.* We give the juvenile court due regard because the juvenile court has the opportunity to assess the credibility of the witnesses. *Id.*

. . . .

"A child is deprived if the child is without proper parental care or control, subsistence, education, or other care or control necessary for the child's physical, mental, or emotional health, or morals, or the child is in need of treatment and the child's parents have refused to participate in treatment as ordered by the juvenile court. N.D.C.C. § 27–20–02(8)(a) and (e). The petitioner must establish the child is deprived by clear and convincing evidence. *In re B.B.* ("*B.B.II*"), 2010 ND 9, ¶ 6, 777 N.W.2d 350. '[P]arental cooperation, or a lack thereof, is pertinent to determining if deprivation will continue.' *B.B. II*, at ¶ 7."

*T.H.*, at ¶¶ 27, 29.

[¶ 10] The evidence reflects little had changed since entry of the prior disposition order and that the issues resulting in T.H.'s initial removal from the home had not been resolved. T.H. continued to "not feel safe with" K.H. and G.H., but mostly with G.H. The caseworker detailed how, although K.H. and G.H. had made some progress, they refused to meaningfully participate in marital and individual therapy as conditions required for resumption of family therapy and reunification. According to the caseworker, K.H. and G.H. told her "that they don't agree with [counseling], it doesn't work for them, they didn't want to do it." The caseworker testified she explained to K.H. and G.H. that counseling services are "typically the services that Social Services want families to work with and I had asked for other suggestions and they didn't have any other ideas at that time. So, family therapy with T.[H.] was never able to continue." The caseworker further testified, "Providers have indicated that there has not been a change in behavior or acknowledgment of any . . . wrong doing, as far as parenting of T.[H.]."

[¶ 11] We conclude the juvenile court's finding that T.H. continues to be deprived is not clearly erroneous.

IV

[¶ 12] The remaining issue is whether K.H. has a remedy when the hearing requirements of N.D.C.C. § 27–20–36(4)(a) have been violated but the resulting disposition order extending placement is supported by the evidence in the record.

[¶ 13] In *N.W.*, 531 N.W.2d at 307, this Court addressed a situation where a permanency order extending placement was not issued in compliance with N.D.C.C. § 27–20–36(4)(a). Orders extending placement of two children were set to expire on June 15, 1994. *N.W.*, at 304. The Social Service Board moved to extend the orders and a hearing on the motion began on May 31, 1994. *Id.* The juvenile court informed the parties the hearing needed to be continued because of a scheduling conflict and heard testimony from only one witness.

*Id.* The court set aside two days in August 1994 to hear additional evidence and on June 9, 1994, issued an order extending placement until September 1, 1994. *Id.* Before the proceedings reconvened on August 30, 1994, the Board amended its petition to request an order of permanent foster care for the children. *Id.* Following the August 1994 hearing, the court found the children continued to be deprived and extended the previous order until August 1, 1995, at which time the Board would be granted permanent foster care. *Id.* at 305.

[¶ 14] On appeal, the parents argued the juvenile court lacked the authority to issue the order for permanent foster care because the hearing was not held until August 30, 1994 and the prior order of disposition expired on June 15, 1994. *N.W.,* 531 N.W.2d at 305. This Court ruled no remedy existed for violation of the statute under the circumstances:

"The Act does not expressly provide a remedy for parties denied the process provided in section 27–20–36, N.D.C.C. However, in situations which may be analogized to the present situation, the Act provides for dismissal if process is not met. Subsection 27–20–24(2) requires: 'If the hearing has not been held within the time limit, or any extension thereof, required by subsection 1 of section 27–20–22, the petition must be dismissed.' Subsection 1 of section 27–20–22 provides that a hearing must be held not more than thirty days after the filing of a petition alleging deprivation.

"[The parents] were given a full hearing on the amended petition. All parties were given every opportunity to offer evidence in support of their positions. The evidence supports the juvenile court's findings of fact, conclusions of law, and orders of disposition. Repeating the process is not likely to change

the results. *E.g., Sexton v. J.E.H.,* 355 N.W.2d 828, 830 (N.D.1984) [citing *In the Interest of F.H.,* 283 N.W.2d 202 (N.D.1979), which states: 'Although parents have a fundamental right to their child which is of constitutional dimension . . ., parental rights will "not be enforced to the detriment or destruction of the happiness and well-being of the child." '].

"We are faced with a situation similar to the one we faced in *Anderson v. H.M.,* [317 N.W.2d 394 (N.D.1982).] In that case we decided that dismissal would serve no purpose. *Accord Appeal of A.H.,* 590 A.2d 123 (D.C.1991); *In the Interest of P.M.,* 201 Ga.App. 100, 410 S.E.2d 201 (1991); *Matter of W.L.,* 260 Mont. 325, 859 P.2d 1019 (1993); *In re Amy W.,* 1995 WL 34789 (Ohio Ct.App. 1995) [Unpublished]. *Contra In re McCrary,* 75 Ohio App.3d 601, 600 N.E.2d 347 (1991); *In the Interest of Adam H.,* 189 Wis.2d 492, 527 N.W.2d 399 (App.1994) [Unpublished]. If we were to dismiss the order of disposition in this case, the Board would be required to file a new petition asking for permanent foster care, a hearing would be held, and the juvenile court would make findings of fact and conclusions of law. It is unlikely that custody of the children would change. Furthermore, the process would be unnecessarily redundant. Dismissing the order of the juvenile court would serve no practical purpose except to delay the opportunity for stability in the lives of the children, and, for that matter, [the parents]."

*Id.* at 307. The Court affirmed the disposition order notwithstanding that it was issued in noncompliance with the statute. *Id.*

[¶ 15] The factual situation in *N.W.* differs from the circumstances in this case. The statutory violation in *N.W.* ultimately resulted in an order for permanent foster

care and, when this Court's decision was issued, the Board continued having custody of the children under the juvenile court's temporary order extending the children's placement. 531 N.W.2d at 305. Dismissing the order of disposition would have resulted in the "unnecessarily redundant" process of the Board refiling a petition seeking permanent foster care under circumstances where stability in the lives of the children would be disrupted and the result likely would be the same. *Id.* at 307. Here, the challenged order extending placement of T.H. already expired on June 1, 2012. The record reflects Social Services has no intention of seeking further extensions. Social Services' involvement with T.H. has ended. Consequently, dismissal of the order would not affect stability in T.H.'s life or necessitate redundant proceedings leading to the same result. The concerns prompting this Court's affirmance of the order in *N.W.* are not present here.

[¶ 16] It is undisputed that the order extending placement violated N.D.C.C. § 27–20–36(4)(a). Under these circumstances, we reverse the order.

V

[¶ 17] We do not address other arguments raised because they either are unnecessary to the decision or are without merit. The juvenile court order is reversed.

[¶ 18] DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.

MARING, Justice, dissenting.

[¶ 19] I, respectfully, dissent. K.H. appeals from a juvenile court permanency order dated March 1, 2012, which extended placement of his daughter, T.H., in the custody of Barnes County Social Services until June 1, 2012. The majority reverses

the March 1, 2012, order because a hearing was not held before the prior order expired as required under N.D.C.C. § 27–20–36.

[¶ 20] K.H. asserts that the order of March 24, 2011, expired January 12, 2012, and because no hearing was held before January 12, 2012, the juvenile court lacked the authority to extend the order on March 1, 2012. The juvenile court did, however, issue an order on December 7, 2011, continuing the custody of T.H. in the Barnes County Social Services and rescheduling a permanency hearing for February 27, 2012. This order was never appealed nor did K.H. ever object to it. In her brief, Barnes County Director of Social Services states the parties stipulated to an extension of the March 24, 2011, order to March 20, 2012, but because of the Adoption and Safe Families Act, the order could not extend beyond January 12, 2012.

[¶ 21] In addition, at the same time, K.H. had pending before this Court an appeal from other juvenile court orders, including an order of disposition extending placement of his daughter, T.H., in the custody of Barnes County Social Services and the March 24, 2011, order denying his motion to dismiss. Our Court affirmed those juvenile court orders on February 17, 2012. *Interest of T.H.*, 2012 ND 38, 812 N.W.2d 373. Our Court held that the juvenile court's findings that K.H. was not currently able to provide proper parental care necessary for the child's physical, mental, or emotional health were supported by the evidence in the record. *Id.* at ¶¶ 29, 37.

[¶ 22] Section 27–20–36(4)(a), N.D.C.C. states:

4.  ... An order of extension may be made if:

a. A hearing is held before the expiration of the order upon motion of a party or on the court's own motion;

. . .

d. The extension does not exceed twelve months from the expiration of an order limited by subsection 3 or two years from the expiration of any other limited order.

The statute appears to have been violated because the juvenile court set January 12, 2012, for the March 24, 2011, order to expire rather than the parties' stipulated date of March 20, 2012, and failed to hold a hearing before January 12, 2012. However, as the majority opinion points out, it is well-settled that this statutory violation did not divest the juvenile court of its jurisdiction over the child, T.H., and the parties. The majority opinion also correctly concludes that the juvenile court's finding in its March 1, 2012, order that T.H. continues to be deprived is not clearly erroneous. In the juvenile court's order dated March 1, 2012, the court found that "[b]ased on the evidence presented in this case, it is contrary to the welfare of T.H. to remain in her parental home, [K.H.'s home], because the goals of the prior order regarding K.H. and G.H. have not been met." The juvenile court held T.H. continued to be a deprived child as of February 27, 2012.

[¶ 23] Because the juvenile court found that T.H. remained a deprived child as of February 27, 2012, I do not agree with the majority's attempt to distinguish *Interest of N.W.*, 531 N.W.2d 303 (N.D.1995). Barnes County Social Services took the position that T.H. was still a deprived child at the February 27, 2012, hearing. A child is deprived if the child "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian." N.D.C.C. § 27–20–02(8)(a). Barnes County Social Services had every intention as of February 27, 2012, to continue to request custody and control of T.H. According to the record, the placement of T.H. with her mother had not been completed as of February 27, 2012. T.H. remained a deprived child as of February 27, 2012. Therefore, dismissal of the March 1, 2012, order would serve no purpose because Social Services would have filed a new petition asking for custody of T.H. At that point in time, custody of T.H. upon a hearing on Social Services' petition would not have changed and the procedure would be unnecessarily redundant.

[¶ 24] Barnes County Social Services agreed to the expiration of the March 1, 2012, order by June 1, 2012, because the conditions for the child to live with the mother would have been met at that time and the child would then no longer be deprived. However, a dismissal of the March 1, 2012, order would have disrupted the entire process and caused the refiling of a petition by Social Services.

[¶ 25] The circumstances of this case do not differ from the circumstances of *Interest of N.W.* This is not the case to sanction the juvenile court for violating N.D.C.C. § 27–20–36(4)(a) by dismissing its order finding deprivation. I would affirm the order of the juvenile court dated March 1, 2012.

[¶ 26] GERALD W. VANDE WALLE, C.J., concurs.